JONES *v.* STATE.

(Division B. Nov. 11, 1929.)

[124 So. 368. No. 27756.]

**Broom & Gober,** of Jackson, for appellant.

James **W. Cassedy, Jr.,** and **Hardy R. Stone,** Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant was convicted, in the circuit court of Copiah county, of an attempt to violate chapter 171, section 1, Laws 1914 (section 1148, Hemingway's 1927 Code), commonly known as the age of consent statute, and the punishment was fixed by the jury at one year in the state penitentiary.

The argument on behalf of appellant is addressed to three points: (1) That the indictment is not sufficient to bring the case within said statute; (2) that there is no such crime as an attempt to violate the statute aforesaid,

that is to say, that section 1049, Code of 1906 (section 813, Hemingway's 1927 Code), cannot be applied; and (3) that the testimony of the injured female is not corroborated. We are of the opinion that the two points first mentioned are not well taken; nor do we agree with the contention of the state that, in a prosecution for an attempt to violate the statute, no corroboration is necessary. The rule must be coextensive with the reasons upon which it is based, and, since the testimony must be corroborated when the principal crime is involved, there is equal, if not more, reason for requiring corroboration when an attempt is in issue.

The troublesome point in the case is whether there was sufficient corroboration to support the verdict.

However much the wording may vary in the numerous definitions of corroboration, the same principle runs through all of them that it means to strengthen, to support, to confirm the testimony of the injured female in respect to the main fact or corpus delicti; and, since the statute expressly provides that "no person shall be convicted upon the uncorroborated testimony of the injured female," this operates to exclude, even if not otherwise excluded, as corroboration, any evidence which emanates from the mouth of the injured female. It must be testimony aside from hers which adds to, strengthens, and in a substantial measure confirms, her testimony. The difficulty, therefore, is not in the matter of determining the general principle of corroboration, but in applying the rule to the particular case. This is what is meant by the expression so often found in the books that "no hard and fast rule can be laid down on the subject of corroboration; each case must depend upon its own merits and surrounding circumstances."

When the hundreds of cases on the subject in the several states are examined, it is found that the varying results in them have in a measure depended upon the

extent to which the particular court was controlled on the one hand by the rule that verdicts of juries are not to be reversed, save for the very weighty and compelling reasons, reasons which the court finds manifest and readily capable of being pointed out, and on the other by the cautionary duty that was emphasized more than two hundred years ago by an eminent English judge that in such cases as this "the accusation is easily made, hard to prove, and harder to be defended and disproved by the party accused, although ever so innocent." And that the caution is amply justified is disclosed by the number of cases in this category, so great as to cause astonishment, in which convictions have been sanctioned by juries on testimony so flimsy and fanciful in matter of corroboration that the conclusion was irresistible that these verdicts were the result, not of reason and judgment, but of predisposition. Crimes against women, and especially against those who are the more helpless or immature, arouse a natural indignation and resentment which will often unconsciously find unjust expression in a verdict of conviction upon facts which, in an ordinary case, would be readily rejected by the jury as not convincing beyond a reasonable doubt. In Monroe v. State, 71 Miss. at page 201, 13 So. 884, 885, Chief Justice CAMPBELL for our court said: "Such is the gallantry of our people, and their jealous regard for the honor of women, and their universal readiness to protect them, and to avenge their wrongs, . . . according to law, and sometimes against law, that there is danger that sentiment may mislead juries, and triumph over right and justice, in the class of cases of which this is one."

It has been for the reasons last above expressed that we have held this case so long under consideration and have so repeatedly reviewed it in examination and in consultation, and it is for those reasons that we affirm the judgment only with reluctance. That the testimony of

the prosecuting female, if corroborated were not required, is ample in every detail to make out the case, there is no question; and, moreover, it is not to be overlooked that her testimony is consistent, direct, and completely connected throughout. We do not go into the details of that testimony, for it would only add one more to the cloud of cases reciting facts which will probably never again happen in the same way. As we have already said, it is, in this case, in the matter of corroboration only that the difficulty arises; as to which we may at once add that without the admissions of the defendant the judgment would have to be reversed.

The female was shown by the testimony to be only fifteen years of age, while the defendant was twenty-five. The girl was in school, and it is admitted by defendant that by a prearranged falsehood told by him to the mother of the girl he succeeded in getting the girl away from her home and from her studies shortly after dark. He admits the purpose to drive to a secluded place, and admits that he there engaged in what, upon his own narrative, brought him to the very verge of the offense charged. In other words, he admits, when the age of the child is considered, and then his own age, that his conduct was in willful disregard of his social duty, and that, in respect to the higher obligations of grown men as concerns a girl of such inferior age, he was determined on serious social mischief. If then he has become entrapped in a chain of circumstances which the jury has said is sufficient to convict him of the offense charged, he has at last only himself to blame.

He admits that while upon the mischievous enterprise the girl left his car at a secluded spot, and ran to the house of Stowell, nearly half a mile distant, in the dark, and it is shown by the undisputed testimony, not from any words said, but from the physical facts, that her condition was such as to disclose that something of a distinctly unusual nature had happened. And, according to

his own admission, this potent circumstance was so intimately integrated in the main transactions, so spontaneous in its sequence, as to give justification to the jury in concluding—as in the natural process of reasoning they must have considered and concluded—that the circumstance of the immediate flight and the physical and mental condition of the child at the immediate end of the flight was such as to exclude the idea of pretense, or fabrication or afterthought. And what was it then that had happened? Was all this, together with all the other undisputed or else admitted details which appear in this record, enough to give support to the jury in answering as they did answer? What happened according to her testimony was the actual overt acts and unmistakable conduct constituting in sufficient measure the offense of the attempt charged. Did the circumstances mentioned, in logical and natural conclusion, substantially strengthen, confirm, or support her said testimony? And, since we are not the triers of the facts, are we to insist that inferences from these facts different from those drawn by the jury shall be drawn—shall we substitute our judgment on the facts for that of the jury? We will not hesitate to do so when the case clearly requires us to do it, but is this such a case? Upon the most mature consideration and reconsideration we are forced to the conclusion that there are not manifest grounds upon which the verdict can be reversed, much as we have hesitated, because we are so much warned by the multitude of reported cases against the dangers of injustice in a charge of this kind.

Affirmed.